UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Crim. No. 01-410-01 (TFH) |
| vs. ) | |
| ) | |
| ) | |
| NATHANIEL THOMAS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Memorandum Opinion**

Pending before the Court are Mr. Thomas's (i) *Pro Se* Motion to Correct Judgment pursuant to Fed. R. Crim. P. 36 [Dkt. # 83] (the "Motion to Correct"), and (ii) *Pro Se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [Dkt. # 79] (the "Habeas Motion"). After a careful review of the motions, the oppositions thereto, and the record of this case, the Court **DENIES** both motions for the reasons stated herein.

I.  **Background**

On July 24, 2001, D.C. police arrested Mr. Thomas after another person accused him assaulting him with a sword in southeast Washington, D.C. The following day police obtained a search warrant for Mr. Thomas's residence in an attempt to find the sword. On July 26, 2001, police executed that search warrant, finding two swords matching the description of the one used in the alleged assault. During that search the police apparently noticed a gun under Mr. Thomas's bed. Based on this observation, on July 26, 2001 police obtained a second search warrant to search for

guns and ammunition. That search yielded two guns and ammunition. At the time, Mr. Thomas was a convicted felon.

On November 20, 2001, a federal grand jury in the District of Columbia indicted defendant on one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The indictment contained an offense date of July 24, 2001. On January 24, 2002 Mr. Thomas filed a motion to suppress (the "<u>Motion to Suppress</u>") the guns obtained from Mr. Thomas's residence, alleging they were the fruit of an unconstitutional search. Judge Jackson denied this motion at a hearing on February 14, 2002.

The case was supposed to go to trial on April 23, 2003. The court selected a jury, but before the jury could be sworn the government moved to amend the indictment pursuant to Fed. R. Crim. P. 7 so that the offense date could be changed from July 24, 2001 (the date of Mr. Thomas's arrest for assault) to July 26, 2000 (the date the guns were discovered during the second search of Mr. Thomas's residence). Defense counsel argued that the change was material, and therefore had to be performed by the grand jury. The court agreed, denied the government's motion to amend, and continued the case so that the government could obtain a superseding indictment from the grand jury. On April 29, 2003 the Government filed a Superseding Indictment reflecting an offense date of July 26, 2001.

On February 24, 2004, the parties appeared in court and the Government announced that it was in the process of granting immunity to Mr. Thomas's mother and brother in exchange for their testimony. Tr. at 2–3. The Government also planned to call Mr. Thomas's wife, who was planning on asserting her marital privilege. The Government would argue that she had waived that privilege when she testified before the Grand Jury. *Id.* On February 25, 2004, Mr. Thomas elected not to go to trial and entered a guilty plea. On July 8, 2004, Judge Jackson sentenced the defendant to 51 months'

imprisonment, to be followed by three years' supervised release. The defendant appealed. On December 30, 2005, the D.C. Circuit affirmed the defendant's conviction, but remanded the case for re-sentencing. On July 19, 2006 Mr. Thomas filed the Habeas Motion.

On September 12, 2006, Judge Hogan resentenced Mr. Thomas to 41 months' imprisonment followed by three years' supervised release, with credit for time served. On October 18, 2006, Mr. Thomas filed the Motion to Correct. The defendant was released from prison on March 9, 2007. Mr. Thomas completed his term of supervised release in March 2010.

**II.    Analysis**

A.    The Motion to Correct

In the Motion to Correct Mr. Thomas argues that his release date should have been December 2006 rather than March 2007. But because Mr. Thomas did complete his prison term in March 2007 and subsequently completed his term of Supervised Release in March 2010, the Court will **DENY AS MOOT** the Motion to Correct because the Court cannot grant any relevant relief to Mr. Thomas.

B.    The Habeas Motion

The Habeas Motion raises a laundry list of claims, all of which are either procedurally barred or meritless. The Court addresses these arguments in three groups: (i) those that are forfeited because Mr. Thomas did not raise them on direct appeal; (ii) those that the Court need not examine because they have already been rejected on direct appeal; and (iii) those that are meritless.

### 1. Claims Forfeited Due to Failure to Raise on Direct Appeal

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). But if a petitioner procedurally defaults on any other claim "by failing to raise it on direct review, the claim may be raised in *habeas* only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *See, e.g., Bousley v. United States*, 523 U.S. 614, 622 (1998). "Cause" must arise from some factor external to the defense, such as government interference or the previous unavailable factual basis to plead the claim despite reasonable investigation. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A defendant arguing "actual prejudice" has the "burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Mr. Thomas's following claims falter under these standards: (i) that the Court erred in denying the Motion to Suppress; (ii) that the Court improperly amended the original Indictment in a substantive manner; (iii) that the search of Mr. Thomas's residence that produced the guns and ammunition was illegal because a minor child consented to the search, and such a search cannot be based on such consent; (iv) that the original Indictment was invalid because it indicated that the Grand Jury for the case was sworn in on July 11, 2000, a year before Mr. Thomas's alleged assault occurred; (v) that the prosecutor failed to produce a copy of the search warrant for the search of Mr. Thomas's residence that produced the guns and ammunition; (vi) that the prosecutor engaged in misconduct by failing to provide Grand Jury testimony of Mr. Thomas's wife to the defense in

violation of *Brady*; and (vii) that the prosecutor engaged in misconduct by threatening Mr. Thomas's wife with prosecution if she invoked her marital privilege and refused to testify at trial.

Aside from suffering substantive flaws, all such claims appear to have been available to Mr. Thomas on direct appeal. Mr. Thomas offers no "cause" whatsoever for the failure to raise them on that appeal. Without such cause, the Court must dismiss these claims as procedurally barred.

### 2. Claims Rejected on Direct Appeal

"'It is well established in the federal circuits that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on a direct appeal from his conviction, absent an intervening change in the law.'" *United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987) (quoting *Garris v. Lindsay*, 794 F.2d 722, 726–27 (D.C. Cir. 1986)). Mr. Thomas raises two claims of ineffective assistance of counsel in his Habeas Motion that were already rejected on direct appeal, citing no intervening changes in law.

First, Mr. Thomas claims that his counsel failed to litigate the validity of the indictments. He claims that no reasonable jury could have found that he possessed the firearms in questions on the day charged in the Superseding Indictment because he was in prison on that day. Second, Mr. Thomas claims that his counsel failed to advise him regarding the option of and pursue a conditional plea that would have reserved the right to appeal the denial of the Motion to Suppress. The D.C. Circuit rejected both arguments on Mr. Thomas's direct appeal. *United States v. Thomas*, 171 Fed. Appx. 868, 870 (D.C. Cir. 2005). Thus, the Court need not consider these two claims.

### 3. Meritless Claims of Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that his counsel's performance was deficient, *i.e.*, that his counsel "made errors so serious that [his] counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish such deficiency, Mr. Thomas must demonstrate that his "counsel's representation fell below an objective standard of reasonableness," or "prevailing professional norms." *Id.* at 688. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). In order to establish that counsel's deficient performance prejudiced his defense, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 69. "[F]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

Mr. Thomas raises three claims of ineffective assistance of counsel not raised on direct appeal. First, Mr. Thomas argues that his counsel "failed to object to the inadmissible evidence presented by the government." Habeas Motion at 9. But because Mr. Thomas never states what this inadmissible evidence was, the Court cannot find any merit to the claim. Moreover, Mr. Thomas's counsel did file a motion to suppress the guns. Second, Mr. Thomas argues that his counsel never properly advised him regarding the effects of his plea agreement. The record contradicts this claim. The transcript of the February 25, 2004 hearing at which the Court discussed the plea agreement with Mr. Thomas shows that he accepted the agreement, that he reviewed it with counsel, that he was

satisfied with counsel's services, and that he understood its terms and effects. Tr. at 3-11. Third, Mr. Thomas summarily argues that his counsel gave him "bad legal advice about pleading guilty." Habeas Motion at 10. But Mr. Thomas offers no insight or detail whatsoever into what this advice was. Again, without such information the Court cannot find any merit to this claim.

The Court thus detects neither any deficiency on the part of Mr. Thomas's counsel on this record nor any actual prejudice to Mr. Thomas based on counsel's performance that meet "the heavy burden required to show ineffective assistance of counsel" under *Strickland*. *Thomas*, 171 Fed. Appx. at 870.

### III. Conclusion

The Court will thus **DENY AS MOOT** the Motion to Correct and **DENY** the Habeas Motion. An appropriate order shall accompany this memorandum.

March 24, 2011

Thomas F. Hogan
UNITED STATES DISTRICT JUDGE